UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANAKAREN LUIS,<br><br>Plaintiff,<br><br>v.<br><br>ZALE DELAWARE, INC., et al.,<br><br>Defendants. | Case No.: 3:25-cv-01819-CAB-MSB<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>[Doc. No. 14] |

Anakaren Luis ("Luis" or "Plaintiff") filed a putative class action against Zale Delaware, Inc. ("Zale" or "Defendant") in California Superior Court in San Diego County, alleging that Zale failed to timely compensate its employees for wages and missed meal breaks and failed to issue adequate wage statements. [*See generally* Doc. No. 1 ("Notice of Removal" or "NOR"), *id.* at Exhibit 1 ("Compl.").] Zale removed the case to federal court alleging diversity jurisdiction under the Class Action Fairness Act ("CAFA"). [Doc. No. 1.] Now before the Court is Luis' motion to remand the case back to state court. [Doc. No. 14.] The motion has been fully briefed and the Court finds it suitable for determination on the papers submitted and without oral argument. *See* CivLR 7.1(d)(1).

///

///

For the reasons set forth below, the Court finds that Defendant has satisfied its burden to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5 million.  Accordingly, the motion to remand is **DENIED**.

## I.      BACKGROUND

Zale operates jewelry stores and kiosks.  [Compl. ¶ 2.]  Luis worked for Zale as an hourly sales associate.  [*Id.* at ¶ 2.]  Luis sued Zale on behalf of herself and a putative class of "over 50 hourly, non-exempt employees . . . for violations of numerous [California] wage and hour laws," including failure to pay for all hours worked, failure to pay minimum wage, and failure to provide required rest and meal breaks.  [*See id.* at ¶ 1.]  Luis' Complaint alleges damages of more than $35,000 but less than $5 million.  [*Id.* at ¶ 13.] The proposed class is "[a]ll persons who are employed or have been employed by [Zale] in the State of California as hourly, non-exempt workers during the period of the relevant statute of limitations."  [*Id.* ¶ 31.]

Zale removed the case to federal court on the basis of jurisdiction under CAFA, which grants original jurisdiction to federal courts in civil class actions filed under federal or state law that meet certain diversity criteria and have an aggregate amount in controversy ("AIC") exceeding $5 million, exclusive of costs and interests.  *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006); 28 U.S.C. § 1446; 28 U.S.C. § 1332(d); NOR.  Zale's NOR included the declarations of Taylor N. Fields, a data analyst with Zale's law firm, and Amanda Vance, a paralegal for Zale, both of which contain information and analysis of Zale's employment and pay data.  [Doc. No. 1-3 ("Fields Decl."); Doc. No. 1-4 ("Vance Decl.").]

Luis then moved to remand the case back to state court.  [Doc. No. 14 ("Mot.").] The only CAFA jurisdictional requirement that Luis contests is that the AIC is insufficient. She argues that there is less than $5 million in controversy because Zale inflated the underlying numbers, used numbers without evidentiary support, assumed improper violation rates, and allocated fees to claims for which fees are not recoverable.  Luis did not submit any declarations or other evidence with her motion.

3:25-cv-01819-CAB-MSB

Zale filed its opposition, [Doc. No. 17 ("Opp.")], which included revised declarations of Taylor N. Fields and Amanda Vance, both containing revised information and analysis of Zale's employment and pay data based on Zale's more conservative estimates. [Doc. No. 17-1 ("Revised Fields Decl."); Doc. No. 17-2 ("Revised Vance Decl.").]

Luis filed a reply, [Doc. No. 18 ("Reply")], which did not include any evidentiary submissions.

## II.    LEGAL STANDARDS

A suit filed in state court may be removed to federal court by the defendant if the federal court would have had original subject matter jurisdiction over that suit. 28 U.S.C. § 1441(a); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977–78 (9th Cir. 2013). Zale argues solely that this Court has original jurisdiction under CAFA. 28 U.S.C. § 1332(d).

Usually, "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). However, "Congress intended CAFA to be interpreted expansively." *Ibarra v. Mannheim*, 775 F.3d 1193, 1197 (9th Cir. 2015). Thus, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). But even "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego*, 443 F.3d at 685; *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018).

To remove a case pursuant to CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. "But evidence establishing the amount is required where, as here, defendant's assertion of the amount in controversy is contested by plaintiffs. In such a case, both sides submit proof and the court decides, by a preponderance

3

of the evidence, whether the amount-in-controversy requirement has been satisfied." *Ibarra*, 775 F.3d at 1197 (citations and internal quotation marks omitted). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197. However, a removing defendant's allegations "may rely on reasonable assumptions" and need not "prove it actually violated the law at the assumed rate." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922, 927 (9th Cir. 2019)

"Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

## III.    DISCUSSION

There is no dispute here that the number of putative class members exceeds the minimum required for CAFA jurisdiction or that the diversity requirements are met. The only dispute concerns the amount in controversy and whether Zale's calculations and underlying assumptions are reasonable and grounded in real evidence. The Complaint is silent as to the amount in controversy. Zale initially removed the case to federal court alleging that the AIC exceeds $5 million based on various assumptions about Zale's alleged violations. [NOR at 11–12.] Following Luis' motion to remand, Zale reduced the assumed violation percentages, resulting in a smaller AIC that still exceeded $5 million. [*See generally* Opp.] The Court proceeds with these more conservative calculations.

### A.    Unpaid Overtime and Minimum Wage ($344,983.62)

Zale assumes one hour of unpaid overtime for 50% of all overtime-eligible weeks and one hour of unpaid minimum wage for 100% of non-overtime-eligible weeks. [Opp. at 12–13.] These assumptions result in an AIC for unpaid overtime and minimum wage claims of $344,983.62. [*Id.* at 12.] Zale supports these assumptions by reference to Luis' allegation that Zale "engaged in *many* unlawful employment practices which resulted in

3:25-cv-01819-CAB-MSB

the underpayment for hours worked *each* pay period, including overtime hours worked." [*Id.* at 11 (emphasis in brief) (quoting Compl. ¶ 43).] Additionally, Zale provides evidence of the number of overtime-eligible and non-overtime eligible weeks. [*Id.* at 11–12 (citing Revised Fields Decl.).]

According to Luis, Zale's assumption of one hour of unpaid overtime for 50% of all overtime-eligible weeks is speculative because Zale's evidence shows that class members are largely part-time employees who worked an average of 15 hours a week. [Reply at 6.] Luis says it is therefore "implausible that part-time employees averaging 15 hours per week routinely incurred one additional unpaid hour in half of all eligible workweeks." [*Id.*] Luis argues that a 10% violation rate is appropriate. [*Id.* at 7.]

The Court disagrees. Zale's overtime estimate was based on its actual employment records and the number of overtime-eligible weeks, meaning weeks "where an employee either worked more than 40 hours, worked at least one shift of more than eight (8) hours, or worked seven (7) or more consecutive days." [Opp. at 11 (citing Revised Fields Decl. ¶ 7(f)).] This accounts for each instance where an employee was entitled to overtime pay, which Zale then halved in its conservative estimate. Luis presents no contradictory evidence. And the Court is not convinced by Luis' argument that the overtime estimates are flawed because the average shift length was 6.78 hours and not 8 hours. [Mot. at 10.] Indeed, employees could be eligible for overtime by working seven or more days in a row, not just by working more than 8 hours in a given shift. Zale also assumed only one hour of unpaid overtime for each of the violations, further reducing the total AIC. Moreover, the Complaint alleged that class members "*frequently* worked off the clock and were *often* subjected to periods wherein they were under the Defendant's control but not compensated for their time." [Compl. ¶ 45 (emphasis added).]

With respect to the non-overtime-eligible weeks, Luis again did not provide any evidence to refute Zale's assumptions, which again were based on actual employment data and the language of Luis' Complaint. And to avoid any issue of double-counting overtime and minimum wage penalties, Zale considered only non-overtime-eligible weeks for its

3:25-cv-01819-CAB-MSB

revised minimum wage calculation. [Opp. at 12.] Though Luis focuses on the Complaint's use of limiting language, like "time to time," this language does not shield Luis from reasonable assumptions backed by submitted evidence or otherwise require Zale to effectively admit actual violation data to prove Luis' case. *See Arias*, 936 F.3d at 927 ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'").

The Court therefore finds that the preponderance of the evidence supports Zale's calculation of $344,983.62 in unpaid overtime and minimum wage violations.

**B.      Rest Break Claims ($1,794,559.91)**

The Complaint alleges that Zale did not provide rest breaks as required by California law, meaning that the rest periods were not in a suitable location, were less than ten minutes, late, interrupted, scheduled inappropriately, or simply not provided. [Compl. ¶ 62.] Zale assumes that 100% of rest breaks were noncompliant, in part because the Complaint alleges that "there were no suitable resting facilities provided," [Opp. at 14 (quoting Compl. ¶ 61)]. Luis counters that this allegation regarding resting facilities "does not mean that employees were prohibited from taking breaks, nor does it establish that breaks taken elsewhere" were noncompliant. [Reply at 9.]

California law penalizes employers who "fail[] to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health[.]" Cal. Lab. Code § 226.7(c). And California's regulations require employers to provide "[s]uitable resting facilities . . . in an area separate from the toilet rooms[.]" Cal. Code Regs. Title 8, § 11040 ((13)(b)). Given the Complaint's unequivocal allegation—which the Court must accept as true at this stage— that rest breaks were noncompliant because "there were no suitable resting facilities provided," [Compl. at ¶ 61], the Court finds Zale's 100% rest break violation assumption

3:25-cv-01819-CAB-MSB

is reasonable.  Zale has therefore demonstrated by a preponderance of the evidence that the AIC for rest break penalties is $1,794,559.91.

### C.   Waiting Time Penalties ($2,064,512.03)

In California, employees are entitled to waiting time penalties if they were not timely paid any wages owed to them upon their termination.  Cal. Lab. Code § 203.  The Complaint alleges that class members whose employment ended during the class period were not timely paid all the wages they were owed at the time of termination.  For these violations, the Complaint alleges that "Plaintiff and similarly situated individuals are now entitled to recover up to thirty (30) days' pay as waiting time under the terms of § 203." [Compl. at ¶ 57.]

In its opposition, Zale assumes a 100% violation rate for Luis' waiting time penalties claim, meaning that each of the employees terminated during the statute of limitations period suffered at least one of the claimed violations and was not timely paid for that violation upon termination.  [Opp. at 14–15.]  Zale presented evidence that 479 employees terminated their employment during the relevant class period, that the average hourly rate of the class members was $21.19, and that the average shift length was 6.78 hours. [Revised Field Decl. at ¶ 4(d)–(f).]  Plaintiff does not offer any contradictory evidence to dispute these figures.  Instead, Plaintiff argues that Zale's assumed 100% violation rate is unreasonable because it "assume[s] that 100% of terminated employees are entitled to the maximum 30-day penalty, without identifying a single example of delayed final pay." [Reply at 10.]

The Court finds Zale's assumption reasonable.  First, Luis alleged that "Defendant has treated all persons employed in California in such a way as to violate California's governing conditions of employment and payment of wages owed."  [Compl. at ¶ 6.] Second, the waiting time penalty claims are derivative of multiple alleged violations; to qualify for a waiting time penalty, an employee need only have experienced one violation and then been terminated without proper payment for that violation.  And as the Central District recently reasoned, a 100% waiting time penalty assumption is reasonable "because

3:25-cv-01819-CAB-MSB

if they were not, they would have no business in Plaintiff's putative class action because they never suffered a[n uncompensated] labor code violation." *Duncan v. Baxalta US Inc.*, No. 2:24-CV-09388-RGK-AS, 2025 WL 40482, at *3 (C.D. Cal. Jan. 7, 2025). Luis cannot circumvent this reality by purportedly limiting its pleadings allegations to "occasions subject to proof." [Compl. at ¶ 41.]

Third, and finally, Zale's assumption that the 479 employees are entitled to the statutory maximum 30-day penalty is reasonable because "the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927 (emphasis in original). "Where a removing defendant has shown potential recovery could exceed $5 million and the plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less, the defendant has borne its burden to show the amount in controversy exceeds $5 million." *Id.* (cleaned up) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010)).

Zale has therefore satisfied its burden to demonstrate by a preponderance of the evidence that the AIC for waiting time penalties is $2,064,512.03.

### D. Attorneys' Fees

Zale assumes attorneys' fees in the amount of 25% of the total penalties. Zale cites case law and fee awards in its past cases to support this amount. [Opp. at 21–23.] The Ninth Circuit has declined to adopt a *per se* 25% attorneys' fee rule. *Arias*, 936 F.3d at 928. However, numerous cases in California district courts—including cases where Luis' attorneys represented plaintiffs—have found a 25% attorneys' fee reasonable. *E.g.*, *Salgado v. T-Mobile USA, Inc.*, No. 1:17-CV-0339-JLT, 2019 WL 6324024, at *12 (E.D. Cal. Nov. 26, 2019) (preliminarily approving an award of 30% of the gross settlement fund in wage and hour class and PAGA action); *Tinoco v. Hajoca Corp.*, No. 17-CV-6187 FMO (ASX), 2019 WL 4239130, at *2 (C.D. Cal. June 18, 2019) (settlement providing for 30% attorneys' fees). Notably, in the only case Luis cites to discredit a 25% assumption, the district court rejects the underlying penalty calculation, not the 25% assumption. *Salazar v. Johnson & Johnson Consumer Inc.*, No. 2:18-CV-05884-SJO-E, 2018 WL 4560683, at

3:25-cv-01819-CAB-MSB

*6 (C.D. Cal. Sept. 19, 2018) (using 25% attorneys' fees assumption on court's penalty calculation).  Additionally, here Zale provides evidence of Luis' attorneys' customary fees and past awards in similar cases to support a 25% assumption.  [Opp. at 19.]

Applying a 25% assumption to the total penalties for waiting time penalties, rest and meal break penalties, and unpaid overtime and minimum wage penalties ($4,204,055.56) yields total attorneys' fees of $1,051,013.89.

\*        \*        \*

Combined, the waiting time penalties, rest and meal break penalties, and unpaid overtime and minimum wage penalties and estimated attorneys' fees total $5,255,069.45.  The AIC required for federal jurisdiction under CAFA is satisfied.  The Court therefore need not analyze additional alleged penalties (e.g. wage statement penalties and meal break penalties), which would only serve to inflate the AIC further.

**IV.    CONCLUSION**

Based on the foregoing, Zale has plausibly alleged that the total AIC exceeds $5 million.  This Court has jurisdiction under CAFA and Luis' motion for remand is **DENIED**.  [Doc. No. 1]

It is **SO ORDERED.**

Dated: January 26, 2026

_____
Hon. Cathy Ann Bencivengo
United States District Judge

9

3:25-cv-01819-CAB-MSB